IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 1:22-cv-965 (LMB/IDD) |
| AZ DIABETIC SUPPLY, INC., et al., | ) ) ) |
| Defendants. | ) |

MEMORANDUM OPINION

Before the Court is the plaintiff United States of America's ("plaintiff" or "United States") Motion for Default Judgment ("Motion") as to defendants AZ Diabetic Supply, Inc. ("AZ Diabetic") and Hisham Zaghal ("Zaghal"). Since the United States filed its Motion, counsel has entered an appearance on behalf of defendant Zaghal, and Zaghal has filed an Answer to the Complaint. [Dkt. Nos. 29, 31]. Accordingly, the Court will deny the Motion as to defendant Zaghal; however, defendant AZ Diabetic has not retained counsel, and it has neither filed an answer nor a responsive pleading nor requested additional time to retain counsel or respond to the Complaint. For the reasons that follow, the plaintiff's Motion as to defendant AZ Diabetic will be granted.

I. BACKGROUND

A. **Statutory Background**

This civil action is brought under the False Claims Act, 31 U.S.C. §§ 3729–3733, based on alleged violations of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, through a fraud perpetrated on the Medicare program by AZ Diabetic. Medicare is a federal healthcare program that provides benefits to individuals age 65 or older and individuals under 65 with disabilities. It

includes Medicare Part B, which authorizes federal funds to be used to pay for medical services, including certain medically-necessary orthotic braces and equipment. A beneficiary must have a medical need for such devices and have secured either a prescription or certification of medical necessity from a licensed practitioner to receive these devices, which are often referred to as durable medical equipment (DME). Medicare-enrolled DME providers, such as defendant, are required to certify that they will comply with all Medicare laws and regulations, including the Anti-Kickback statute, which prohibits any provider from:

> knowingly and willfully offer[ing] or pay[ing] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—
>
>> (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
>>
>> (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

42 U.S.C. § 1320a-7b(b)(2). The statute further states that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the False Claims Act]." Id. at § 1320a-7b(g). The False Claims Act states that any individual who

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . .
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-4101), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1). Under the False Claims Act, the terms "knowing" and "knowingly"

> (A) mean that a person, with respect to information—
>> (i) has actual knowledge of the information;
>>
>> (ii) acts in deliberate ignorance of the truth or falsity of the information; or
>>
>> (iii) acts in reckless disregard of the truth or falsity of the information; and
>
> (B) require no proof of specific intent to defraud.

Id. at § 3729(b)(1).

## B. Factual Background

The uncontested well-pleaded facts alleged in the Complaint establish the following. AZ Diabetic, a Medicare-enrolled provider since 2002, is a for-profit Virginia corporation that supplied DME braces to patients. [Dkt. No. 1] at ¶¶ 6, 18, 19. Since 2006, it has been owned and operated by Zaghal. Id. at ¶ 7. From January 2016 through December 2021, Medicare paid AZ Diabetic an estimated $1,297,347.08 to reimburse claims for DME that AZ Diabetic supplied to Medicare-covered patients. Id. at ¶ 19. AZ Diabetic received at least $612,329.16 in reimbursements based on prescriptions purchased from two companies: RealTime Consulting & Marketing, Inc., Quality Rx Solutions ("RealTime") and LPI Media Group ("LPI"). Id. at ¶ 21.

RealTime was owned and operated by Nathan LaParl ("LaParl") from January 2014 through July 2019, and served as an intermediary call center that connected Medicare patients and DME suppliers, such as AZ Diabetic. Id. at ¶ 23. RealTime would purchase Medicare beneficiaries' contact information from companies that ran targeted advertisements to Medicare recipients, and then have its call center employees use a RealTime-produced script to call Medicare beneficiaries to inquire whether they were interested in receiving DME "at little to no

cost." Id. at ¶ 24. If a beneficiary expressed interest, RealTime would collect the beneficiary's personal information and contact his or her primary care physician to request a prescription for DME. Id. After receiving DME prescriptions, RealTime sold the prescriptions to DME suppliers, including AZ Diabetic. Id. at ¶ 25. On January 7, 2020, LaParl pleaded guilty to receiving kickbacks in connection with a federal healthcare program, in violation of the Anti-Kickback Statute and HIPAA, 42 U.S.C. § 1320d-6. Id. at ¶ 33.

AZ Diabetic "through its owner Zaghal" paid a fee to RealTime for each prescription it purchased. Id. at ¶ 26. This fee fluctuated based on the price of the DME brace prescribed, with more expensive braces earning RealTime a higher fee. Id. RealTime's owner, LaParl, verified to plaintiff that Zaghal understood AZ Diabetic to be purchasing DME prescriptions themselves, rather than beneficiary contact information or marketing leads. Id. LaParl guaranteed that Medicare would reimburse AZ Diabetic for the prescriptions it purchased from RealTime. Id. at ¶ 29. When Medicare denied reimbursement for certain braces, because, for example, the "same or similar" device had been provided to the beneficiary within a given period, LaParl provided substitute prescriptions to AZ Diabetic at Zaghal's request. Id. AZ Diabetic purchased at least 347 prescriptions from RealTime between August 2016 and April 2017, and submitted claims based on these prescriptions to Medicare, which paid defendant a total of $234,978.93. Id. at ¶¶ 22, 30.

AZ Diabetic also purchased DME prescriptions from LPI, a company owned and operated by Steven Churchill ("Churchill"), which purchased qualified leads from RealTime for $150 per lead. Id. at ¶¶ 35–36. Using these leads, LPI paid telemedicine doctors to write DME prescriptions and sold the prescriptions and patients' personal and medical data to DME suppliers, including AZ Diabetic. Id. On November 19, 2020, Churchill was indicted for

4

receiving and soliciting kickbacks in connection with a federal healthcare program, in violation of the Anti-Kickback Statute. Id. at ¶ 42. From October 2018 to February 2019, AZ Diabetic purchased at least 576 prescriptions from LPI for a flat rate of $400 per prescription. Id. at ¶¶ 38, 40–41. Medicare paid AZ Diabetic $377,350.23 for the claims based on the prescriptions purchased from LPI. Id. at ¶ 40.

The Complaint also alleges that Zaghal and AZ Diabetic knew that purchasing prescriptions from RealTime and LPI violated the Anti-Kickback Statute by pointing to the defendants' awareness of the requirements of the Anti-Kickback Statute because, as an enrolled Medicare provider, AZ Diabetic, through Zaghal, certified that payment of a Medicare claim was conditioned on its compliance with the Anti-Kickback Statute. Id. at ¶ 43. Additionally, Zaghal made statements to law enforcement agents on two separate occasions indicating that he knew purchasing prescriptions in connection with a Medicare reimbursement violated the Anti-Kickback Statute. Id. at ¶¶ 44–49.

Plaintiff has attached a spreadsheet detailing the 923 claims at issue in this civil action. It contains the following information: (1) the company from which AZ Diabetic purchased the prescription, either RealTime or LPI, (2) the last four digits of the beneficiary's social security number, (3) the procedure code[1] used in the DME claim, (4) the amount billed to Medicare, (5) the amount paid to AZ Diabetic, (6) the claim submission date, and (7) the claim paid date. [Dkt. No. 1-2]. The spreadsheet shows that 923 claims were submitted to Medicare between August 2016 and April 2019 using prescriptions purchased from RealTime and LPI. Id.

---

[1] Each of the DME claims submitted to Medicare by AZ Diabetic was made using one of ten Current Procedural Terminology (CPT) codes, which are codes published by the American Medical Association that each correspond to a different medical procedure or device. [Dkt. No. 1] at 6 n.2.

5

## C. Procedural History

On August 24, 2022, plaintiff filed the pending three-count Complaint, alleging in Count I that defendants "caused the submission of false and fraudulent claims to Medicare in violation of" the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B); in Count II, that defendants were unjustly enriched by the Medicare payments; and, in Count III, that the plaintiff is entitled to recover for payment by mistake. [Dkt. No. 1]. The Complaint was personally served on defendants on September 13, 2022, making an answer or responsive pleading due on October 4, 2022. [Dkt. Nos. 6, 7]. When neither defendant had filed an answer or responsive pleading by that date, the Court ordered plaintiff to obtain a Clerk's entry of default and to file a motion for default judgment. [Dkt. No. 8]. The Clerk entered a default as to both defendants on October 24, 2022, and plaintiff filed its pending Motion for Default Judgment on November 28, 2022, along with a notice consistent with the requirements of Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. Nos. 11, 13, 15]. On January 6, 2023, the magistrate judge held a hearing on the Motion, at which defendant Zaghal appeared represented by counsel who was not admitted to practice in this Court. Since then, counsel admitted to practice in this Court entered an appearance to represent only defendant Zaghal, and, on February 7, 2023, only defendant Zaghal filed an Answer to plaintiff's Complaint.

## II. DISCUSSION

### A. Standard of Review

Plaintiff moves for a default judgment against AZ Diabetic pursuant to Fed. R. Civ. P. 55, which requires two steps. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After securing the Clerk's entry of default, if the claim is not for a sum certain, a plaintiff must apply to the court to

6

enter a default judgment. Fed. R. Civ. P. 55(b)(2). "The decision to enter default judgment lies within the sound discretion of the court." STL Emirates Logistics, LLC v. Tamerlane Glob. Servs., Inc., 2014 WL 12660119, at *2 (E.D. Va. Dec. 11, 2014) (citations omitted).

When a defendant is in default, "the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." JTH Tax, Inc. v. Olivo, 2016 WL 595297, at *3 (E.D. Va. Feb. 12, 2016) (quoting S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418, 422 (D. Md. 2005)). A complaint's well-pleaded allegations must not be speculative, but must be factual allegations that "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). In assessing liability under Rule 55, the "appropriate inquiry is whether or not the face of the pleadings supports the default judgment and the causes of action therein." Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians, 187 F.3d 628, *1 (4th Cir. 1999) (unpublished table decision) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). A court must independently determine the appropriate amount of damages. JTH Tax, Inc., 2016 WL 595297, at *3. To do so, it may, within its discretion, hold an evidentiary hearing on damages or may consider documents within the record, including affidavits. STL Emirates Logistics, LLC, 2014 WL 12660119, at *2.

### B. Analysis

#### 1. Jurisdiction, Venue, and Service

Before ruling on plaintiff's Motion, the Court must ascertain whether it has subject matter jurisdiction over plaintiff's claims and personal jurisdiction over AZ Diabetic, and venue must be proper in the Eastern District of Virginia. The Court has subject matter jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1345 as the United States commenced this action. Additionally, the Court has subject matter jurisdiction over plaintiff's False Claims Act claim

under 28 U.S.C. § 1331, and plaintiff's unjust enrichment and payment by mistake claims under 28 U.S.C. § 1367(a).

The Virginia long-arm statute "states that 'transacting any business in this Commonwealth' is sufficient to confer personal jurisdiction." JTH Tax, LLC v. White, 2023 WL 3321737, at *3 n.4 (E.D. Va. May 9, 2023) (quoting Va. Code § 8.01-328.1(A)(1)). Because the Complaint alleges that the acts proscribed by the False Claims Act occurred in the Eastern District of Virginia, and that AZ Diabetic "can be found in, reside[s], and/or ha[s] transacted business within" this district, it has established that the Court has personal jurisdiction over AZ Diabetic. [Dkt. No. 1] at ¶ 3. Moreover, defendant should "reasonably anticipate being haled to court" in the Eastern District of Virginia as it conducted business within the district, including the prohibited acts under the False Claims Act, and it maintains its home office within this district. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see FireClean, LLC v. Tuohy, 2016 WL 3952093, at *5 (E.D. Va. July 21, 2016). Additionally, venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b)(1) because defendant AZ Diabetic is subject to personal jurisdiction in the Eastern District of Virginia. Id. § 1391(c)(2).

Fed. R. Civ. P. 4(e)(2)(C) permits service of a complaint on an individual by "delivering a copy of [the summons and the complaint] to an agent authorized by appointment or by law to receive service of process." On September 7, 2022, the Clerk issued a summons as to AZ Diabetic through its registered agent, Zaghal, at an address in Vienna, Virginia. [Dkt. No. 5]. As indicated by the returned proof of service, process server Mark Simons served AZ Diabetic through Zaghal as a registered agent on September 13, 2022. [Dkt. No. 6]. Based on the foregoing, AZ Diabetic was properly served with the summons and Complaint.

2. Liability

To establish defendants' liability under 31 U.S.C. § 3729(a)(1) for a "direct false claim," United States ex rel. Herrera v. Danka Off. Imaging Co., 91 F. App'x 862, 864 (4th Cir. 2004), the United States must generally show that "(1) the defendants presented a claim, or caused a claim to be presented, to the [G]overnment; (2) the claim was false or fraudulent; (3) the defendants knew the claim was false or fraudulent; (4) the claim was material; and (5) the claim caused the [G]overnment to pay out money or to forfeit moneys due." United States ex rel. Bunk v. Birkart Globistics GmbH & Co., 2014 WL 2967940, at *5 (E.D. Va. June 30, 2014).

The well-pleaded facts of the Complaint establish that AZ Diabetic submitted 923 claims relating to DME prescriptions for Medicare reimbursement, which were false because they were made in violation of the Anti-Kickback Statute. "A violation of the Anti-Kickback Statute . . . automatically constitutes a false claim under the False Claims Act." United States v. Mallory, 988 F.3d 730, 741 (4th Cir. 2021), cert. denied sub nom. Dent v. United States, 142 S. Ct. 485 (2021) (citing United States ex rel. Lutz v. United States, 853 F.3d 131, 135 (4th Cir. 2017)). The Anti-Kickback Statute makes it illegal for any person to "knowingly and willfully offer[] or pay[] any remuneration . . . to any person to induce such person . . . to refer an individual to a person . . . for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(2); see Mallory, 988 F.3d 730, 735 (4th Cir. 2021). Here, the plaintiff has alleged sufficient facts to establish that AZ Diabetic, a Medicare-enrolled provider entitled to receive reimbursements from the program, purchased 923 prescriptions from RealTime and LPI, used these prescriptions to purchase DME equipment for patients, and then received Medicare reimbursement for these purchases. Because AZ Diabetic paid "renumeration[s]" to RealTime and LPI to induce them "to refer an individual . . . for the furnishing" of an "item or service for which payment" could be made under Medicare,

9

the well-pleaded facts in the Complaint establish that AZ Diabetic violated the Anti-Kickback Statute. 42 U.S.C. § 1320a-7b(b)(2). Accordingly, plaintiff has established that AZ Diabetic made false claims for purposes of the False Claims Act.

As to the scienter element, the Complaint alleges sufficient facts to establish that AZ Diabetic possessed the requisite knowledge that its Medicare claims violated the Anti-Kickback statute. The element of materiality is satisfied as the Fourth Circuit has concluded that, because a violation of the Anti-Kickback Statute "automatically constitutes a false claim under the False Claims Act," a plaintiff need not also show that the claims are material. Mallory, 988 F.3d at 741 (4th Cir. 2021). Lastly, the United States has also submitted sufficient uncontested evidence to establish the fifth and final element, as Medicare paid AZ Diabetic $612,329.16 in reimbursement for claims based on prescriptions involving illegal kickbacks. Accordingly, plaintiff has sufficiently established that AZ Diabetic perpetrated a scheme that constituted a knowing violation of the False Claims Act. Because the Court finds defendant AZ Diabetic liable for Count I of plaintiff's Complaint, it does not need to consider defendant's liability under Counts II or III, which plaintiff concedes are alternative theories to Count I. [Dkt. No. 14] at 17–18.

    3. Damages

Having found AZ Diabetic liable under Count I, the Court must determine the proper amount of damages to award. An evidentiary hearing is not needed given the significant evidence presented in plaintiff's papers. See Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians, 155 F.3d 500, 507 (4th Cir. 1998). Specifically, plaintiff has attached a detailed spreadsheet to the Complaint, which outlines the specific amounts that the Medicare program reimbursed AZ Diabetic for the 923 claims made based on purchased prescriptions from RealTime and LPI. [Dkt. No. 1-2].

A defendant found liable of knowingly violating the False Claims Act will be liable for "3 times the amount of damages which the Government sustains" and "a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990." 31 U.S.C. § 3729 (citation omitted). Plaintiff has established that AZ Diabetic received $612,329.16 in reimbursements from Medicare for claims that violated the False Claims Act. Accordingly, plaintiff is entitled to trebled damages in the amount of $1,836,987.48. Plaintiff is also entitled to civil penalties for each of the 923 separate claims made. See United States ex rel. Drakeford v. Tuomey, 792 F.3d 364, 386 (4th Cir. 2015). Because these false claims occurred over a number of years, they are subjected to varying minimum and maximum civil penalties based on adjustments for inflation. Plaintiff calculated the minimum and maximum penalties for the relevant years as the following, and the Court agrees with this calculation.

| Violation Assessed After | Minimum Penalty | Maximum Penalty |
|---|---|---|
| August 1, 2016 | $10,781 | $21,563 |
| February 3, 2017 | $10,957 | $21,916 |
| January 29, 2018 | $11,181 | $22,363 |

The Court finds an award of the minimum penalty for each of the 923 claims to be sufficient to effectuate the purposes of the False Claims Act's civil penalties provision. In total, this entitles the United States to $10,199,567 in civil penalties,[2] and, when combined with the trebled damages, the United States is entitled to a total award of $12,036,554.48 in damages.

---

[2] This calculation includes 243 claims submitted from August 30, 2016 through February 2, 2017, totaling $2,619,783, 104 claims submitted from February 3, 2017 through January 28, 2018, totaling $1,139,528, and 576 claims submitted from January 29, 2019 through April 8, 2019, totaling $6,440,256.

11

## III. CONCLUSION

For the reasons stated above, plaintiff's Motion for Default Judgment will be granted as to defendant AZ Diabetic and denied as to defendant Zaghal by an appropriate Default Judgment Order to be issued with this Memorandum Opinion.

Entered this 25 day of May, 2023.

Alexandria, Virginia

                                              /s/
                                       Leonie M. Brinkema
                                       United States District Judge